UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Armstead et al.,

        Plaintiffs,

v.

Haynes et al.,

        Defendants.

CASE NO. 3:20-cv-05327-JCC-JRC

REPORT AND RECOMMENDATION

NOTED FOR: February 3, 2023

    The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4.

    Plaintiffs bring suit under 28 U.S.C. §§ 1331 and 2241 and 42 U.S.C. § 1983, alleging that as prisoners at Stafford Creek Corrections Center ("SCCC"), defendants violated their Eighth Amendment rights. Specifically, plaintiffs claim that defendants were deliberately indifferent to the risk of COVID-19 infection by failing to implement and adhere to adequate COVID-19 safety policies. Plaintiffs seek injunctive and declaratory relief as well as costs.

    Defendants have moved for summary judgment based on plaintiffs' failure to prove that defendants were deliberately indifferent to the risk of COVID-19 at SCCC. The Court agrees that

1  plaintiffs have failed to come forward with evidence that defendants were deliberately indifferent
2  to the risk of COVID-19 for prisoners at SCCC. Notably, while defendants have produced
3  evidence of a comprehensive and evolving COVID-19 mitigation strategy in place at SCCC and
4  elsewhere, plaintiffs have produced no evidence to show that defendants were deliberately
5  indifferent to the risk of contracting COVID-19. As plaintiffs have failed to make an adequate
6  showing of proof on this element, their claims cannot survive summary judgment.
7        Accordingly, the Court recommends that defendants' motion for summary judgment be
8  granted and plaintiffs' claims be dismissed with prejudice.

## BACKGROUND

10        Plaintiff Wendell Armstead and over 100 co-plaintiffs, all prisoners at SCCC, filed the
11  initial complaint in this case on April 6, 2020, although all but three co-plaintiffs later withdrew.
12  Dkts. 1, 38. Subsequently, Plaintiffs Armstead, Bobby Colbert, Donald Galbert, and Daryl
13  Rogers, represented by counsel and proceeding *in forma pauperis,* filed an amended complaint—
14  without the involvement of the remaining co-plaintiffs—on July 26, 2021.  Dkt. 58.
15        In their complaint, plaintiffs bring causes of action against all defendants under 28 U.S.C.
16  §§ 1331 and 2241, as well as against defendant Ronald Haynes under 42 U.S.C. § 1983. Dkt. 58,
17  at 29–34. The common thread in all of these causes is plaintiffs' assertion that the Defendants
18  have created unconstitutional conditions of confinement at the SCCC by failing to take adequate
19  action in response to the COVID-19 pandemic, violating the Eighth Amendment to the U.S.
20  Constitution. Dkt. 58, at 29–34. Specifically, plaintiffs allege that defendants failed to implement
21  COVID-19 protocols such as social distancing, wearing face masks, having hand sanitizers
22  available, and quarantining individuals. *See id.* at 15–28. Plaintiffs request specific injunctive
23  relief related to pandemic protocols, including appointing an expert monitor to ensure
24

compliance and the release of plaintiffs, in addition to declaratory relief and costs. Dkt. 58, at 36–39. Although plaintiffs sought to bring their action on behalf of "all current and future incarcerated persons" at SCCC, they have not brought a subsequent motion for class certification. Dkt. 58, at 26.

Defendants filed a motion for summary judgment and supporting documentation on November 4, 2022. *See* Dkts. 72, 73, 74. In their motion, defendants assert that plaintiffs have failed to establish a violation of their Eighth Amendment rights and, further, that plaintiffs are not entitled to injunctive relief. Due to a scheduling error, plaintiffs moved for an extension of time to respond to defendants' motion for summary judgment on December 5, 2022, and filed the response on the same day. Dkts. 75, 76. Defendants filed their reply on December 14, 2022. Dkt. 77.

**DISCUSSION**

**A. Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a summary judgment motion, the Court must take the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

The opposing party cannot rest solely on his pleadings but must produce significant, probative evidence in the form of affidavits, and/or admissible discovery material that would

allow a reasonable jury to find in his favor. *Anderson*, 477 U.S. at 249–50. Conclusory allegations and mere speculation are not enough to create a genuine issue of material fact. *See, e.g.*, *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed— show that the movant is entitled to it[.]" Fed R. Civ. P. 56(e)(3).

**B. Eighth Amendment and Deliberate Indifference**

Plaintiffs allege that the DOC and Superintendent Haynes violated their Eighth Amendment rights when they failed to take greater measures to prevent the spread of COVID. Dkt. 58, at 29–34. "[A] prison official violates the Eighth Amendment only when two requirements are met." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the inmate must show that the alleged deprivation at the hands of prison officials was "objectively, sufficiently serious" and "result[ed] in the denial of the minimal civilized measures of life's necessities." *Id.* While conclusions regarding this requirement "should be informed by objective factors to the maximum possible extent," the Supreme Court has held that "[no] static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual" because the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id.* at 347.

1    Second, the inmate must show that the prison official acted with a sufficiently culpable

2  state of mind—specifically, that the prison official acted with "deliberate indifference to inmate

3  health and safety." *Farmer*, 511 U.S. at 834. As the Court held in *Farmer*,

4   > a prison official cannot be found liable under the Eighth Amendment for denying
   > an inmate humane conditions of confinement unless the official knows of and
5  > disregards an excessive risk to inmate health or safety; the official must both be
   > aware of facts from which the inference could be drawn that a substantial risk of
6  > serious harm exists, and he must also draw the inference.

7  *Id.* at 837. Moreover, the Court stated that "prison officials who actually knew of a substantial

8  risk to inmate health or safety may be found free from liability if they responded reasonably to

9  the risk, even if the harm ultimately was not averted." *Id.* at 844. Thus, "prison officials who act

10 reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer*,

11 511 U.S. at 844.

12    **i. Defendants' Evidence**

13    In bringing the present motion, defendants rely on declarations from Ronna Cole, DOC's

14 Deputy Assistant Secretary for the Health Services Division, as well as Jamison Roberts, DOC's

15 Chief of Emergency Operations. Dkst. 74, 75. In her declaration, Ms. Cole details "the major

16 components of DOC's response to the [COVID-19] pandemic." These measures included

17 extensive testing—as of November 2022, 254,354 tests had been administered to 45,490

18 individuals, 93% of which came back negative—and reductions in the prison population, through

19 a "Rapid Reentry" program, sentence commutations, and furloughs, from 16,310 incarcerated

20 individuals in April 2020 to 12,350 in September 2022. Dkt. 73, at 6. Cole's declaration also

21 indicated a COVID-19 mortality rate of 0.11% in the prison system, compared to a rate of 0.79%

22 in Washington as a whole. Dkt. *Id.* at 5.

23

24

REPORT AND RECOMMENDATION - 5

1    In his declaration, Mr. Roberts stated that DOC opened its Emergency Operations Center in February 2020 and thereafter developed a COVID-19 Screening, Testing, and Control Guideline, which has since been continuously updated. Dkt. 74, at 2. Among other matters, this Guideline—attached to the declaration as an exhibit—provides protocols for the "screening and testing of incarcerated individuals and staff, isolation and quarantine of affected individuals, clinical evaluation and care of COVID-19 patients, preventative measures for high risk individuals housed in certain units, and personal protective equipment for staff." Dkt. 74, at 2. Roberts's declaration also highlights the Guidelines' "procedures for outbreak testing and management," as well as an "Outbreak Checklist," drawing on "the Department's considerable experience managing positive cases at several facilities." *Id.*

Finally, on reply, defendants produced a declaration from Shane Evans, Health Services Manager at SCCC. Dkt. 78. Therein, Mr. Evans indicated that SCCC has offered COVID-19 vaccines and booster shots, including the most recent booster offered in November 2022, to all individuals incarcerated at the facility. Dkt. 78, at 2. Evans indicated that plaintiff Armstead received the initial Moderna vaccine on April 8, 2021, but had not since received a second dose or booster, while plaintiff Galbert received both Moderna doses and the most recent booster. *Id.* Per Evans's declaration, these are the only two plaintiffs currently incarcerated at SCCC, while plaintiffs Colbert and Rogers were housed elsewhere. *Id.*

**ii. Plaintiffs' Evidence**

Plaintiffs submitted two reports, both from 2020, from the Office of Corrections Ombuds detailing instances of DOC noncompliance with CDC guidelines at SCCC. Dkt. 76-1, at 23, 26. Plaintiffs also rely on numerous affidavits from individuals currently or formerly incarcerated at SCCC. In his own affidavit of November 2021, plaintiff Armstead states that inmates

transferring into SCCC are not isolated; COVID-positive and COVID-negative prisoners were mixed together or not provided room to socially distance; and prisoners have restricted access to cleaning supplies while facing plumbing issues. Dkt. 76-1, at 91–101. The declarations of Peter Carr, David Gasvoda, Gilbert Greenwood, John T. Mower, Cory Crum, Jason Hadaller, and Jerrod Johnson—all dated from April, May, or June 2020—raise similar concerns regarding a lack of opportunity to isolate and mixing in close quarters. *See id.*, at 105–36. The declaration of Colt Borgeson, also from April of 2020, indicates poor hygiene by prison staff in the prison kitchens. *Id.* at 101. Adding to this concern, the contemporaneous declaration of Dustin Gilders indicated a black mold problem in the kitchen coinciding with a COVID-19 outbreak. *Id.* at 117. Finally, an August 2021 declaration from Daryl Rogers states that a staff member who tested positive was allowed to work without proper masking until being ordered to leave later in the day. Dkt. 76-1, at 137.

**iii. Analysis**

In the amended complaint, plaintiffs contended that defendants had "an official policy that they are to ignore the basic needs of inmates lodged at SCCC" and that defendants "have failed to take reasonable steps . . . or to reasonably mitigate these significant risks" of COVID-19 infection. Dkt. 58, at 32–33. Plaintiffs now acknowledge defendants' considerable policies and procedures to mitigate the risk of COVID-19 infection, but allege that these policies were not followed. *See* Dkt. 76, at 7. The bulk of plaintiffs' supporting declarations are from April and May 2020, with the most recent declaration from plaintiff Armstead having been made in November 2021. Dkt. 76-1, at 91. This evidence, while competent, does not support plaintiffs' claim that the conditions of confinement amounted to deliberate indifference.

Even if certain policies, such as wearing a mask and isolating positive individuals, were violated by some prison staff, some of the time, plaintiffs provide nothing to support his claim that defendants condoned any violation of the prison's COVID-19 policy, so as to make it a custom or practice adopted by defendant. Plaintiffs' reliance on the Office of Corrections Ombuds reports detailing instances of noncompliance with DOC and CDC guidelines in 2020 does not support a finding that defendants were deliberately indifferent. These were, and are, difficult times. It is clear from the evidence presented that at times defendants struggled to meet the challenges presented by this new and unique virus, but the evidence does not demonstrate that their efforts were deliberately indifferent to plaintiffs.

Defendants have presented evidence that DOC continues to expend a considerable amount of resources, expertise, and planning to prioritize reducing the risk of infection for the incarcerated population. Defendants' supporting declarations indicate that they have followed the Center for Disease Control ("CDC") guidelines for detention facilities, which provide a "flexible, long-term approach to COVID-19 in correctional facilities by using community and facility-level indicates to assess COVID-19 risk in a facility." Dkt. 74-1, at 3–4. This includes the option to revert to more restrictive measures if there is an increase in community deaths and hospitalizations due to COVID-19. *Id.* at 4. It also includes continued guidelines on screening, testing, the use of personal protective equipment, isolation, quarantines, masking, environmental cleaning, and contact tracing. *Id.* The declarations also indicate that revisions continue, based on input from medical providers and other community resources, including defendants' monitoring community levels to inform decisions regarding recreation, visiting, work, programming, and congregation. Dkt. 74-2, at 7–20. Plaintiffs have not presented contemporaneous evidence refuting the DOC's declarations. Even if these measures did not eliminate all risk of contracting

COVID-19, this does not establish that defendants were deliberately indifferent to plaintiffs' serious medical needs. *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 330 (3rd Cir. 2020).

The Court recognizes that plaintiffs' concerns regarding the risks COVID-19 presented—and continues to present—in prisons are valid. At the same time, the appropriate response to the pandemic has continuously evolved and not all responses are going to be perfect. *See Maney v. Brown*, No. 6:20-CV-00570-SB, 2020 WL 2839423, at *3 (D. Or. June 1, 2020) ("the question is not whether [defendant] can do better, the question is whether [defendant] has acted with indifference to the risks posed by COVID-19."). To hold a defendant liable for its handling of the COVID-19 pandemic under the Eighth Amendment's deliberate indifference standard, a plaintiff has to show that defendants were more than negligent, but that their actions were "akin to recklessness[.]" *Farmer*, 511 U.S. at 837. Plaintiffs have not presented evidence to demonstrate the existence of an issue of material fact on this point.

**C. Permanent Injunction**

Next, the Court addresses plaintiffs' request for a permanent injunction. An injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). While "the decision to grant or deny injunctive relief rests within the equitable discretion of the district courts," "such discretion must be exercised consistent with traditional principles of equity." *eBay Inc. v. MercExchange, L..L.C.*, 547 U.S. 388, 394 (2006). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987)). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.*

"[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc.*, 547 U.S. at 391.

In addition, the Prison Litigation Reform Act of 1995 ("PLRA") imposes limits on the scope and duration of permanent injunctive relief, requiring that "[a] court shall give substantial weight to any adverse impact on . . . the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1). Further, the PLRA prohibits the award of any "prospective relief" in a prisoner civil rights action which is not "necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." *Id.* at § 3626(a)(1)(A). The PLRA defines prospective relief as "all relief other than compensatory money damages." 18 U.S.C. § 3626(g)(7).

Plaintiffs' complaint is devoid of allegations that establish irreparable injury. It includes only declarations from plaintiffs Galbert and Rogers who assert that their medical conditions render them especially vulnerable. Dkt. 58 at 41–44. There is no indication of injury as to plaintiffs Armstead and Colbert. While the Court is sympathetic to plaintiffs' concern with COVID-19 exposure, it does not establish an irreparable injury that would support a permanent injunction. Plaintiffs do not, in response to defendants' motion, make any argument that injunctive relief is warranted; thus, plaintiffs have failed to rebut defendants' summary judgment showing that the conditions plaintiffs alleged in their complaint did not warrant an injunction. Therefore, the Court recommends summary judgment dismissal of plaintiffs' request for injunctive relief.

**CONCLUSION**

The undersigned recommends that defendants' motion for summary judgment (Dkt. 72) be **granted;** plaintiffs' claims should be **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 3, 2023**, as noted in the caption.

Dated this 9th day of January, 2023.

J. Richard Creatura
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 11